2005-NMCA-049

111 P.3d 708

**KOB–TV, L.L.C., Petitioner–Appellant,**

v.

**CITY OF ALBUQUERQUE, Respondent–Appellee.**

No. 22,853.

Court of Appeals of New Mexico.

March 23, 2005.

392

Geoffrey D. Rieder, Wayne R. Suggett, Travis G. Jackson, Maestas, Rieder & Suggett, P.C., Albuquerque, NM, for Appellant.

Robert M. White, City Attorney, Mark Hirsch, Michael I. Garcia, Assistant City Attorneys, City of Albuquerque, Albuquerque, NM, for Appellee.

## OPINION

WECHSLER, Judge.

{1} We consider in this appeal the effect of a change in regulation on an existing property use. KOB–TV (KOB) had obtained a permit from the City of Albuquerque (City), allowing KOB to build a helipad, and had operated a helicopter at the site for several years. The City then adopted Ordinance O–73, regulating the placement of helicopters within City limits and instituting a one-year amortization period for conformance. KOB appeals the district court's order denying its appeal from the City's adoption of O–73 and determining that the City's decision to revoke KOB's permit was moot. We hold that the City's adoption of O–73 was a valid zoning decision, which was not a quasi-judicial action, and that KOB's use of its property as a helipad was not subject to immediate termination. However, we further hold (1) that there is no evidence in the record showing that the ordinance's one-year amortization period is reasonable and (2) that the City's decision to revoke KOB's building permit is not moot and the City's revocation decision

was improper. We affirm in part, reverse in part, and remand for further proceedings.

*Background*

{2} KOB's television studios have been located at Broadcast Plaza SW for nearly fifty years. The property is triangular in shape and is zoned SU–2/O–1. Special use/commercial properties are on two sides, including KRQE's studio to the east and the City's fire training complex to the south. The Huning Castle and Barelas residential neighborhoods are adjacent to the property. KOB has operated a news-gathering helicopter at the property for several years. The other two major television stations in Albuquerque have similar operations. In 1980, the City considered, but did not pass, legislation that would have restricted helicopters in the City.

{3} In 1997, KOB began to remodel its facility and sought to build a permanent helipad. It received approval from the Federal Aviation Administration for operation of its helicopter. KOB then applied to the City's Zoning Enforcement Division for approval of its site plan for the helipad. On July 22, 1997, the City granted KOB approval for the construction of the helipad, stating that it was "an integral part of the [t]elevision [s]tation under this zoning." The City issued KOB a building permit and KOB presented evidence to the City that, in reliance on the building permit, KOB acquired a $1 million helicopter and began remodeling its facility.

{4} In the spring of 1998, the City's Environmental Health Department received noise complaints and conducted an investigation. It did not reach a conclusion regarding the violation of any ordinances or statutes in connection with KOB's helicopter use. KOB took steps to address some of the neighbors' concerns. It limited flying and idling times of the helicopter, hired acoustic engineers to identify solutions to the noise problem, and agreed to mediation with the neighborhood associations. Nevertheless, the neighborhood association complaints resulted in the introduction of two proposed ordinances to the City Council: one, O–73, restricted helipads to a special use zone, and the other, O–109, restricted the take-off and landing of all helicopters to the airport.

{5} Although related, the two ordinances proceeded through the City's zoning process separately. After deferrals, the Land Use Planning and Zoning Committee (LUPZ) held a hearing regarding O–109. It received expert testimony about noise and setbacks. The owners and managers of the television stations in Albuquerque presented comments, as did the neighborhood associations from the areas of operating helipads. At the conclusion of the hearing, the LUPZ determined to send the ordinance to the full council without a recommendation.

{6} O–73 was also deferred before it was heard by the LUPZ. The LUPZ then decided to conduct a joint hearing on O–73 and O–109. There was again comment from the neighborhood associations and the television stations. After further discussion, the LUPZ voted to pass both O–73 and O–109 to the full council with a "do pass" recommendation. The vote was 5–0 for O–73 and 3–2 for O–109.

{7} The full City Council considered the two pieces of legislation at a public hearing, at which it heard further comment from the television stations and their neighbors. At the conclusion of the public hearing, the council voted 8–1 to approve O–73. The council voted unanimously not to pass O–109. KOB appealed the passage of O–73 to the district court.

{8} O–73 effected a text amendment to the City zoning code making helipads allowable uses only within a SU–1 special use zone. A SU–1 zone is regulated by a site plan, which must be approved by the City zoning authority. The ordinance required a minimum distance from residential areas of 350 feet, limited non-emergency operations to three daily, and prohibited helicopter landing and take-off operations. It excluded medical and law enforcement helicopters from its restrictions. It adopted an amortization period of one year for all property owners to correct nonconforming helicopter use.

{9} While the legislation was proceeding through the City, the neighborhood associations appealed the City's grant of the permit

to KOB to redesign its parking lot and build a helipad. The appeal included the City's decision to allow fuel storage and distribution at the site. The Environmental Planning Commission (EPC) heard the appeal and failed to reach a decision. The neighborhood associations appealed. The LUPZ voted to send the appeal to the full council. The full council decided to grant the appeal and revoked the permit allowing KOB's helipad use, finding that the zoning authority's interpretation of the zoning code with regard to helicopter use by television stations was incorrect. KOB appealed that decision to the district court.

{10} KOB consolidated its two appeals in district court into an amended petition for review of the administrative action and complaint for violation of due process, equal protection, inverse condemnation, unconstitutional taking, and civil rights violation. It voluntarily dismissed its inverse condemnation/just compensation claim. The issues ultimately before the district court for decision were KOB's claims regarding the adoption of the helipad ordinance and the revocation of the approval of KOB's helipad permit. KOB claimed that it had a vested right to maintain a helipad on its property. It argued that the enactment of O–73 was a downzoning of its property, which entitled it to a quasi-judicial hearing before the City. It further contended that the evidence did not justify the ordinance, including the one-year amortization period. After considering the written briefs and the parties' oral arguments, the district court affirmed the City Council's action in the adoption of the ordinance. As a result, the court determined that the matters relating to the permit were moot. It denied KOB's motion for reconsideration. Thereafter, KOB petitioned this Court for a writ of certiorari to review the decision of the district court. We granted the writ.

### Vested Right v. Nonconforming Use

■■■ {11} KOB alleges that it has a vested right in the property to maintain a helipad by virtue of the City's granting it a building permit and its investment in reliance on the permit. Both vested rights and nonconforming uses are means of requiring the govern-ment to allow property uses that have been prohibited by newly enacted legislation. *See generally* 1 Kenneth H. Young, *Anderson's American Law of Zoning* § 6.01 (4th ed.1996); 6 Patrick J. Rohan, *Zoning and Land Use Controls* § 41.01[5] and § 41.02[4] (Lori A. Hauser & Nancy H. Greening eds. 1992). However, the two doctrines appear to protect different land use matters.

■■■ {12} A nonconforming use is a use that lawfully existed prior to the enactment of a zoning ordinance prohibiting such a use. *See City of Las Cruces v. Huerta*, 102 N.M. 182, 184–85, 692 P.2d 1331, 1333–34 (Ct.App. 1984). The use must be an actual rather than contemplated use of the property. *Id.* at 184–85, 692 P.2d at 1333–34. If the property is actually lawfully being used before the enactment of the ordinance restricting the use, the government may not immediately terminate the use. *Rhod–A–Zalea & 35th, Inc. v. Snohomish County*, 136 Wash.2d 1, 959 P.2d 1024, 1027 (1998) (en banc); *cf. Temple Baptist Church, Inc. v. City of Albuquerque*, 98 N.M. 138, 145, 646 P.2d 565, 572 (1982) (stating that a reasonable amortization period satisfies constitutional requirement of just compensation in termination of nonconforming use).

■■■ {13} The term "vested right" may be used to describe a nonconforming use. *See Rhod–A–Zalea & 35th, Inc.*, 959 P.2d at 1027 ("The right to continue a nonconforming use despite a zoning ordinance which prohibits such a use in the area is sometimes referred to as a 'protected' or 'vested' right."). However, in New Mexico, the vested rights doctrine applies to an ongoing development or project that has been approved and upon which substantial investment has been made. *El Dorado at Santa Fe, Inc. v. Bd. of County Comm'rs*, 89 N.M. 313, 319, 551 P.2d 1360, 1366 (1976) (holding that the rights of a subdivider to complete subdivision vested after county approval of lands such that subsequent subdivision law and regulations did not apply); *In re Sundance Mountain Ranches, Inc.*, 107 N.M. 192, 195, 754 P.2d 1211, 1214 (Ct.App.1988) (applying a vested right analysis to hold that ordinances and regulations in effect at the time of subdivision application applied to ongoing develop-

ment of proposed subdivision); *see also Brazos Land, Inc. v. Bd. of County Comm'rs,* 115 N.M. 168, 170, 848 P.2d 1095, 1097 (Ct. App.1993) (applying vested rights analysis to determine that new zoning ordinance applied to proposed subdivision because there was no approval of the application or substantial reliance or changing position by the developer). The vested rights doctrine allows the development or project to be completed and operated in accordance with the regulations in effect at the time of approval and substantial investment. *See In re Sundance Mountain Ranches, Inc.,* 107 N.M. at 193–94, 754 P.2d at 1212–13. Thus, the vested rights doctrine is used in those instances in which there is work in progress when a change in the land use regulations goes into effect. *See id.*

■ {14} As a general rule, a party seeking to establish a vested right to the use of property to exempt it from subsequent land use regulation must show: "(1) [the] issuance of written approval to the applicant for the proposed subdivision or construction project; and (2) a substantial change in position by the applicant in reliance upon such approval." *Sandoval County Bd. of Comm'rs v. Ruiz,* 119 N.M. 586, 589, 893 P.2d 482, 485 (Ct.App. 1995); *see also Brazos Land, Inc.,* 115 N.M. at 170, 848 P.2d at 1097 (stating two requirements for vested right; approval by regulatory body and "substantial change in position in reliance thereon"). As we have previously noted, the purpose of the vested rights doctrine is to protect a property developer from governmental regulation that shifts. *In re Sundance Mountain Ranches, Inc.,* 107 N.M. at 194, 754 P.2d at 1213. Thus, when changes in the law occur after a developer has secured a building permit and has substantially invested in the property in reliance on that permit, but before the development is completed, the developer is assured that the project may be completed and operated despite the intervening change in the law. *See id.*

{15} There is no dispute in this case that KOB acquired a permit from the City to locate and construct a permanent helipad on its property and that, after receiving the permit, KOB constructed the helipad, made improvements to its facility, and purchased a $1 million helicopter. As a result, KOB had a vested right to complete its development of a helipad in the face of any intervening regulation. However, O–73 did not go into effect until after KOB had completed its helipad and had started the use of the helicopter. KOB was lawfully using its property for helicopter take-off and landing at the time that the City enacted O–73 prohibiting such use. Therefore, KOB's use of its property for its helicopter was a nonconforming use. As a nonconforming use, it was not subject to immediate termination.

■ {16} KOB argues that because its right to operate a helicopter from its premises became a vested right as opposed to a nonconforming use, the City could never impair that right. Even accepting KOB's position that it had a vested right and not a nonconforming use, this distinction is one without a difference in this context. Both create a right in the property owner to continue a use that has been restricted by newly enacted legislation. However, the use does not continue perpetually as KOB argues. A vested right is nothing more than "the power to do certain actions or possess certain things lawfully." *Rubalcava v. Garst,* 53 N.M. 295, 298, 206 P.2d 1154, 1156 (1949) (internal quotation marks and citation omitted). It protects the property owner from the impairment of that right by the government. Like a nonconforming use, a vested right may be impaired by the government "whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people." *Swink v. Fingado,* 115 N.M. 275, 291, 850 P.2d 978, 994 (1993) (internal quotation marks and citation omitted). A property owner does not have a vested right in a particular zoning classification. *Aragon & McCoy v. Albuquerque Nat'l Bank,* 99 N.M. 420, 423, 659 P.2d 306, 309 (1983).

{17} In this case, the City determined that the operation of helicopters within the City had "potential adverse impacts on the health, safety, and welfare of the users and the surrounding property." O–73, § 1. It therefore determined that the location and operation of helipads needed to be regulated. That determination impairs KOB's right,

whether it is a "vested right" or a "nonconforming use."

### Quasi-judicial v. Legislative Action

■ {18} The district court found that the actions of the City in enacting O–73 were quasi-judicial rather than legislative. According to KOB, this finding requires remand to the City to conduct a quasi-judicial hearing. We do not agree with the district court's finding.

■ {19} Legislative action "reflects some public policy relating to matters of a permanent or general character, is not usually restricted to identifiable persons or groups, and is usually prospective." *Dugger v. City of Santa Fe*, 114 N.M. 47, 51, 834 P.2d 424, 428 (Ct.App.1992); *see Miles v. Bd. of County Comm'rs*, 1998–NMCA–118, ¶¶ 11, 12, 125 N.M. 608, 964 P.2d 169 (concluding that county-wide comprehensive zoning ordinance was a legislative action); *W. Old Town Neighborhood Ass'n v. City of Albuquerque*, 1996–NMCA–107, ¶ 11, 122 N.M. 495, 927 P.2d 529 (discussing the difference between zoning actions that apply to a single property and those that reflect public policy of a general nature).

■ {20} On the other hand, quasi-judicial action has been defined as involving "a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question." *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Vill.*, 757 P.2d 622, 625 (Colo.1988) (en banc). Thus, application of a general rule to a particular piece of property to determine the manner in which a particular piece of property can be used is quasi-judicial. *W. Old Town Neighborhood Ass'n*, 1996–NMCA–107, ¶ 11, 122 N.M. 495, 927 P.2d 529; *Dugger*, 114 N.M. at 51, 834 P.2d at 428.

■ {21} To make the distinction in a particular case, the principal focus is "on the *nature of the governmental decision and the process by which that decision is reached.*" *Jafay v. Bd. of County Comm'rs*, 848 P.2d

892, 898 (Colo.1993) (en banc) (internal quotation marks and citation omitted). The relevant issues include whether the zoning action applies only to a single site rather than establishing an area-wide policy regarding future urban growth, and whether the government's factfinding is adjudicative as opposed to legislative. *Id.* at 898. "This determination is not based on whether the zoning decision adversely affects an individual piece of property but whether the [zoning] decision itself is made on individual or general grounds." *Bucktail, L.L.C. v. County Council of Talbot County*, 352 Md. 530, 723 A.2d 440, 447 (1999). The nature of the factfinding process is determinative. *Id.* at 447.

■ {22} We recognize that a legislative decision may appear adjudicatory when parties focus on the effect of the particular decision on individual rights. However, policy decisions generally "begin with the consideration and balancing of individual rights." *Raynes v. City of Leavenworth*, 118 Wash.2d 237, 821 P.2d 1204, 1210 (1992) (en banc). If the zoning decision has general application and reflects public policy in relation to matters of a general nature, such as zoning of a community or area, without consideration to any particular piece of property, the action is legislative.

{23} In this case, O–73 enacted an amendment to the zoning code. The amendment restricted the location and operation of all helicopters, except medical and law enforcement helicopters, to SU–1 zones. Because the restriction applied throughout the City, it was not a quasi-judicial decision directed at KOB.

■ {24} KOB argues to the contrary, contending that the restriction only applies to the handful of television stations in Albuquerque and is thus quasi-judicial. But, the fact that a zoning authority considers a particular party's proposed development or a particular parcel when it takes action does not change the nature of the decision. *See Atlanta Bio–Med, Inc. v. DeKalb County*, 261 Ga. 594, 408 S.E.2d 100, 102 (1991) (upholding zoning amendment of general application despite focus on specific property for development). Additionally, the ordinance

amendment applies to all helicopters that may be used in conjunction with a business, except medical and law enforcement. The amendment is not limited to television helicopters or KOB's helicopter in particular.

{25} KOB further argues that the amendment is quasi-judicial because it specifically targeted KOB's helicopter use. We agree that KOB's neighbors initiated the amendment. However, the purpose of the amendment was to regulate the location and use of helicopters within the City. Even if KOB's helicopter use triggered the City's actions, the final action reflected policy to be applied in the future, such that it is not a rezone, targeting a single property. *See Greenbriar Vill., L.L.C. v. City of Mountain Brook*, 202 F.Supp.2d 1279, 1293 (N.D.Ala.2002), *reversed in part on other grounds sub nom. Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1267 (11th Cir.2003) (upholding ordinance designed to resolve ambiguities and clarify existing code even though it was enacted at least in part, in response to concerns of landowners surrounding the plaintiff's property); *N. Ga. Mountain Crisis Network, Inc. v. City of Blue Ridge*, 248 Ga.App. 450, 546 S.E.2d 850, 853 (2001) (stating that "a zoning amendment does not discriminate against a property owner merely because the amendment may have originated from [neighbors'] complaints"); *see also Atlanta Bio–Med, Inc.*, 408 S.E.2d at 102. KOB's property was not the sole property subject to the helicopter restrictions. The restrictions are applicable to all properties and future helicopter use in the City.

{26} Procedurally, KOB argues that the City cannot challenge the district court's determination that the City's action was quasi-judicial because it did not file a cross-petition for certiorari. We do not agree. In its arguments to this Court, KOB has raised the district court's ruling that the City's action was quasi-judicial. It also argues that "[t]he linchpin to this appeal is the fact that the City treated its stripping KOB of its vested property rights as a legislative, rather than an adjudicative, act." Thus, contrary to KOB's argument, the nature of the City's action was not raised first by the City. Rath-

er, the City was responding to KOB's arguments. The City may argue that its actions were legislative rather than quasi-judicial because that conclusion provides an alternative ground for affirmance of the City's enactment of O–73. *See Aitken v. Starr*, 99 N.M. 598, 599, 661 P.2d 498, 499 (Ct.App.1983) (pointing out that the rules allow "review of rulings adverse to appellee which need [to] be considered only in the event the appeal is found to have merit, *but because of which it is contended the case should nevertheless be affirmed* ").

### Downzoning

{27} KOB specifically contends that the City's actions downzoned its property. *See Davis v. City of Albuquerque*, 98 N.M. 319, 320–21, 648 P.2d 777, 778–79 (1982) (explaining that downzoning consists of the rezoning of a property to a more restrictive use); *Miller v. City of Albuquerque*, 89 N.M. 503, 506, 554 P.2d 665, 668 (1976). Rezoning to a more restrictive classification requires "a mistake in the original zoning or . . . a substantial change . . . in the character of the neighborhood since the original zoning" justifying a change in zoning. *Miller*, 89 N.M. at 506, 554 P.2d at 668. However, there was no change in the zoning of KOB's property, it remains SU–2/O–1. By virtue of the amendment, helicopters are no longer viewed as an ancillary use and are limited to a SU–1 zone. Although KOB argues that O–73 was site specific, as we pointed out above, O–73 established policy for the entire city. This case is not one in which a single property was rezoned to a more restrictive use. Rather, it is like *Mandel v. City of Santa Fe*, 119 N.M. 685, 689, 894 P.2d 1041, 1045 (Ct.App.1995), in which we held that a city-wide height restriction in historic zones did not target a specific property and was not a downzone of the property in question. KOB's claim that the City's actions amounted to a downzoning that required a change or mistake in the original zoning is without merit.

### Setback

{28} KOB further argues that the setback of 350 feet established in O–73 is not supported by substantial evidence. "Ju-

dicial review of a zoning authority's decision is limited to questions of law." *Downtown Neighborhoods Ass'n v. City of Albuquerque*, 109 N.M. 186, 189, 783 P.2d 962, 965 (Ct.App. 1989). We conduct "the same review as the district court, which is simply to determine whether the zoning authority's decision is illegal in whole or in part." *Siesta Hills Neighborhood Ass'n v. City of Albuquerque*, 1998-NMCA-028, ¶ 6, 124 N.M. 670, 954 P.2d 102. Our review of actions taken by the City Council "is undertaken with deference and those decisions are disturbed only if the court is not satisfied that the action was authorized by law or if it is not supported by substantial evidence." *Id.* When we review the evidence, we review it in the light most favorable to the administrative body and we do not substitute our judgment for that of the administrative body. *Id.*

{29} Initially, City staff recommended that helipads should not be located within 250 to 500 feet of a residential area. It later reduced its recommendation to 200 feet with fewer than four operations per day. At the first EPC hearing, there was a great deal of discussion regarding the noise level at different distances. The discussion among the EPC members after public comment indicated that they wanted a distance of more than 300 feet. Thereafter, the distance was established at 350 feet for further discussion. City staff pointed out that the site visits supported a distance of several hundred feet. A noise expert, Harvey Penower, who also conducted site visits, reported his conclusions regarding distance, noise, and annoyance levels to the EPC.

{30} KOB attacks the testimony of Penower contending that he did not provide the factual or scientific basis to support his conclusions. We recognize that an expert, even in an administrative hearing, must explain the steps followed to reach a conclusion. *Four Hills Country Club v. Bernalillo County Prop. Tax Protest Bd.*, 94 N.M. 709, 714, 616 P.2d 422, 427 (Ct.App.1979). We do not agree, however, that Penower failed to explain how he reached his conclusions. He explained that much of his conclusions was a function of the existing noise level, the distance from the measurement site to the heli-

pad, and the manner in which the helicopters were operated.

{31} Furthermore, Penower's testimony was not the sole evidence regarding the relationship between distance and noise and annoyance. The City's Environmental Health Department also studied the noise and acceptable decibel levels, along with the influence of distances on noise levels. Further, although KOB urges that such opinion is unsubstantiated and thus not admissible, there is a great deal of evidence from people living in the neighborhoods near the three television stations regarding the noise from the helicopters. Contrary to KOB's contention, persons affected by the noise of the helicopters are not giving expert opinions regarding the relationship between distance and noise and annoyance. They are simply stating their admissible observations regarding the noise. *See* Rule 11–701 NMRA (allowing lay opinion when witness's testimony is based on the witness's own perception and would be helpful to a determination of a fact in issue); *see also City of Farmington v. Fawcett*, 114 N.M. 537, 548, 843 P.2d 839, 850 (Ct.App.1992) (allowing witnesses to give their own opinions based on their own observations).

{32} KOB additionally argues that there was no specific evidence to support the 350–foot distance requirement because none of the studies was conducted at 350 feet. Tests were performed at 110 feet, 200 feet, and over 400 feet, comparing the level of noise. There was extensive public testimony regarding annoyance levels of the noise in comparison with the distances from the helipads. The decibel and annoyance levels were greatest at 110 feet and were least at 400 feet. It was not necessary that tests be performed at 350 feet to support the City Council's decision to adopt 350 feet as the minimum distance requirement. There was sufficient evidence from which the City Council could reach a conclusion regarding the minimum distance of helipads from residential areas.

*Amortization*

{33} O–73 allows a one-year amortization period for helipad operators to con-

form to O–73 or make alternative arrangements and recoup their financial investment. KOB challenges the reasonableness of this amortization period. The City argues that KOB cannot attack the amortization period because it dismissed its inverse condemnation claim. We recognize that our Supreme Court has stated that a reasonable amortization period is a constitutional alternative to just compensation for a taking. *Temple Baptist Church, Inc.,* 98 N.M. at 145, 646 P.2d at 572. However, KOB's claim regarding the amortization period is not a claim for compensation, but rather a claim that the amortization period is unsupported by the evidence and, therefore, unreasonable. In addressing the amortization issue in this case, we reiterate that, when a use becomes nonconforming because of a change in the zoning regulations, the government cannot immediately terminate that use. Even though the use has been found to be detrimental to the public, "it would be unfair and perhaps unconstitutional to require an immediate cessation of a nonconforming use." *Rhod–A–Zalea & 35th, Inc.,* 959 P.2d at 1027.

 {34} Nevertheless, there are methods that the government can use to terminate a nonconforming use, including condemnation, nuisance law, abandonment, and amortization. *See generally* Jay M. Zitter, *Validity of Provisions for Amortization of Nonconforming Uses,* 8 A.L.R.5th 391, 406 (1992). Under amortization, the government grants a grace period for the property use to come into conformance with the new regulations. *Temple Baptist Church, Inc.,* 98 N.M. at 145, 646 P.2d at 572. A decision to amortize a nonconforming use is a legislative decision. *See AVR, Inc. v. City of St. Louis Park,* 585 N.W.2d 411, 414–15 (Minn.Ct.App. 1998).

 {35} The dispositive question in amortization "is whether the amortization period is reasonable." *Temple Baptist Church, Inc.,* 98 N.M. at 145, 646 P.2d at 572. "In order to decide the reasonableness of an amortization period, courts generally review evidence relating to the circumstances bearing upon a balancing of the public gain against the individual loss." *Id.* The factors to be considered in this balancing heavily depend on the circumstances and the particular type of nonconforming use. As stated in *AVR, Inc.,* those factors may include (1) the nature of the structure located on the property; (2) the nature of the use; (3) the location of the property in relation to surrounding uses; (4) the character of and uses in the surrounding neighborhood; (5) the cost of the property and improvements; (6) the benefit to the public by requiring the termination of the nonconforming use; (7) the burden on the property owner by requiring termination of the nonconforming use; and (8) the length of time that use has been in existence and the length of time the use has been nonconforming. *See AVR, Inc.,* 585 N.W.2d at 412–13 (listing statutory factors used by the city in determining a reasonable amortization period). Other cases have included factors relating to the ability and cost of relocation, the ability of the business to continue to operate, the depreciation value of the asset, and the useful life of the use. *See Harbison v. City of Buffalo,* 4 N.Y.2d 553, 176 N.Y.S.2d 598, 152 N.E.2d 42, 47 (1958); *Validity of Provisions for Amortization of Nonconforming Uses,* 8 A.L.R.5th at 407.

 {36} It appears that the one-year amortization period in this case was initially inserted in the ordinance temporarily while the City accumulated evidence to support a reduction of the City's standard forty-year amortization period. Even though further research was required, the ordinance was sent to the City Council with the one-year amortization period. At the City Council hearing, there was further discussion about the factors and evidence that needed to be weighed to determine an amortization period. Although there was discussion regarding the factors and evidence required, nothing was presented. Thus, the record does not reflect a weighing of the impact on KOB's business of the termination of the use against the public gain of removing helicopter use from the property in order to ascertain the reasonableness of the amortization. *See Temple Baptist Church, Inc.,* 98 N.M. at 145, 646 P.2d at 572. We therefore reverse and remand to the City for consideration of evidence regarding a reasonable amortization period. In so doing, the City must consider

the fact that KOB's building and use of the helipad was the result of the City's approval of a building permit. *See AVR, Inc.*, 585 N.W.2d at 415.

### Mootness

{37} The district court determined that the City's decision to revoke the permit it gave KOB for construction and installation of a permanent helipad on its property was moot in light of the court's decision to uphold the enactment of O–73. Courts do not decide abstract or moot questions. *Appelman v. Beach*, 94 N.M. 237, 239, 608 P.2d 1119, 1121 (1980). A case is moot when no actual controversy exists. *City of Las Cruces v. El Paso Elec. Co.*, 1998–NMSC–006, ¶ 16, 124 N.M. 640, 954 P.2d 72. Thus, when legislation is enacted that resolves a conflict, a question concerning the conflict addressed to a court will be moot. *Id.* ¶ 17.

{38} The City argues that because O–73 affected KOB's use of the helipad, the permit originally allowing the construction of the helipad no longer has effect. It therefore argues there is no actual controversy concerning the revocation of the permit. We do not agree. First, the neighborhood associations' appeal that the City Council granted revoking the permit identified the permit as being for a helipad and related fuel tanks. The permit, on its face, says nothing about fuel tanks. The record indicates that the fuel tanks were installed many years before the helipad was built and had nothing to do with the helicopter or the helipad. As a result, KOB has the right to continue the use of the fuel tanks, and the City's decision regarding those fuel tanks in connection with helicopter use was not in accordance with the law. The district court should have made a decision regarding KOB's right to use its fuel tanks.

{39} Second, the permit approved KOB's building of a helipad and KOB subsequently made substantial investment in reliance on the permit. The permit and the investment gave rise to a vested right in the use of the property in accordance with the permit. *See Sandoval County Bd. of Comm'rs*, 119 N.M. at 589, 893 P.2d at 485;

*In re Sundance Mountain Ranches, Inc.*, 107 N.M. at 194–95, 754 P.2d at 1213–14. The City cannot revoke the permit after KOB's use vested without recognizing KOB's vested right. *See El Dorado at Santa Fe, Inc.*, 89 N.M. at 319, 551 P.2d at 1366 (stating that once rights vest, they "cannot thereafter be withheld, extinguished or modified except upon due process of law"); *City of Chicago v. Zellers*, 64 Ill.App.2d 24, 212 N.E.2d 737, 739 (1965) (pointing out that when a legal permit has been issued and substantial change in position has occurred, the permit cannot be revoked). By adopting O–73, the City recognized KOB's right to the use of its property for helicopter take-off and landing and subjected this right to the amortization period of O–73. The City cannot then revoke the permit so as to remove KOB's right to amortization. Thus, not only is KOB's appeal of the revocation not moot, but the revocation was improper pending amortization.

### Conclusion

{40} We hold that the adoption of O–73 was a valid exercise of the City's zoning authority. However, the record does not support that the one-year amortization period was reasonable. We affirm in part, but reverse and remand for proper consideration of the factors necessary to determining a reasonable amortization period. Finally, we reverse the City's revocation of KOB's building permit. The City cannot revoke KOB's underlying right to the use of its helipad subject to a reasonable amortization period, yet to be determined by the City Council.

{41} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and JONATHAN B. SUTIN, Judge.