2008-NMCA-124

192 P.3d 1218

**Joseph F. MILLER, et al., Plaintiffs–Appellees,**

v.

**BOARD OF COUNTY COMMISSIONERS OF SANTA FE COUNTY, et al., Defendants–Appellants.**

No. 26,336.

Court of Appeals of New Mexico.

June 18, 2008.

Certiorari Denied, No. 31,216, Aug. 6, 2008.

VanAmberg, Rogers, Yepa & Abeita, L.L.P., Ronald J. VanAmberg, Santa Fe, NM, for Appellees.

French & Associates, P.C., Stephen G. French, Robyn Hoffman, Albuquerque, NM, Basham & Basham, P.C., Mark A. Basham, Santa Fe, NM, for Appellants.

## OPINION

KENNEDY, Judge.

{1} In this opinion, we discuss limits on the continuing validity of approval given to a subdivision plat. Under the circumstances of this case, we hold that the approval given to a subdivision plat in 1986 did not survive to 2004 so as to grant rights to proceed with development of the land and that Santa Fe County was correct in determining that the plat was no longer viable so as to deny the landowner construction permits.

{2} We reverse the district court and remand for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### Introduction

{3} The dispute in this case concerns the remaining portion of a tract of undeveloped land in the Eldorado area of Santa Fe County referred to as Lot 8, owned by Appellee Miller. In 1986, a subdivision plat was approved for Lot 8 by the Santa Fe Board of County Commissioners (Board). The land was subsequently split into two lots; one is partially developed, and the portion purchased by Miller passed through other owners without being developed. Miller sought to develop his lot. In 2004, the Board issued a decision that the subdivision plat that had been approved in 1986 was no longer viable and denied construction permits for Miller. Miller appealed to the district court, and the district court reversed the Board's order. The Board now appeals the district court's final order on appeal.

### Historical Facts

{4} In May of 1986, the Board granted the original owners of Lot 8 final plat approval to develop a 100 unit subdivision known as Tier-

ra Colinas. This final plat approval was subject to several conditions. The final plat for Lot 8 was never recorded with the County Clerk, and the land was not developed at that time.

{5} Lot 8 was subsequently sold to two parties, Michael Richter and Pat Coughlin. In April of 1988, these owners of Lot 8 decided to divide the lot into two parcels, referred to as Lot 8A and Lot 8B. The lot split was approved by Santa Fe County and recorded in April of 1988. Lot 8A was retained by Mr. Richter and is the subject of this appeal.

{6} In June of 1994, Mr. Coughlin, the owner of Lot 8B, went before the Board asking that it "reapprove" the Tierra Colinas subdivision as a down-scaled subdivision from 100 units to 50 units to be built on Lot 8B. The Board granted conditional approval of the down-scaled subdivision, requiring compliance with the original conditions imposed on the Tierra Colinas subdivision and additional conditions.

{7} In 1996, Lot 8A's owner applied for and received master plan approval of a 98–unit residential subdivision called Sun Ranch East on Lot 8A. This master plan differed from the Tierra Colinas final plat approval for the same acreage of Lot 8 in almost doubling the density of development from that previously approved. This master plan was approved; the approval was recorded with the County Clerk. No further action was taken to develop Lot 8A.

{8} Later in 1996, however, the Board passed a series of moratorium ordinances to deal with a water emergency within the Eldorado communities. The first was Ordinance No.1996–4: Ordinance Declaring a Water Emergency within the Service Area of Eldorado Utilities. The ordinance stated that "no applications for new land divisions, master plans and subdivisions will be accepted by the Santa Fe County Land Use Administrator or his staff and no pending applications for land divisions, master plans or subdivisions will be acted upon by the Santa Fe County Land Use Administrator, for any property within Eldorado Utilities' Service Area." Subsequent ordinances have since

been enacted which further limit development in the service area of Eldorado Utilities due to the water emergency. It is undisputed that Lot 8A is within the Utilities' service area.

{9} By January of 2000, Lot 8A had passed to Stephen Gibbens. On January 21, 2001, the Assistant County Attorney sent Mr. Gibbens a letter informing him that the County would not recognize the 1986 Tierra Colinas preliminary and final development plans. The County's attorney gave three bases for his opinion that the 1986 final plat approval was not valid. First, he stated that Mr. Gibbens did not have a vested right in the 1986 development plan because there was no contracting, building, or other substantial reliance by Mr. Gibbens on the 1986 approval. Second, the County stated that because the conditions of the 1986 approval were never met, the 1986 final development was never approved, and therefore no rights had vested. Third, the County took the position that the approval of the 1996 master plan for a new and more dense subdivision on the property showed the prior owner's intent to abandon the 1986 Tierra Colinas plan. The record does not indicate whether Mr. Gibbens took any further action with respect to this issue.

{10} Two years later, in March of 2003, Miller bought Lot 8A by warranty deed. The Real Estate Purchase Agreement stated that the property was being sold in "as is" condition. The agreement further stated that the seller

has sustained losses and damages, including for diminution of the value of the Property, by reason of certain actions, inactions, errors, omissions, breaches of contract and/or wrongful conduct of the County of Santa Fe, the State of New Mexico, Amrep Corporation, Eldorado at Santa Fe, Inc., Eldorado Utilities, Inc., and others presently unknown which resulted in the imposition of a moratorium on residential subdivision development at the Property.

In February of 2004, Miller submitted a final plat plan and a development plan to the County Land Use Director for a scaled-back 50–unit subdivision on Lot 8A.

{11} On March 31, 2004, the County Land Use Administrator, Roman Abeyta, sent Miller a letter in which he stated that the County would not recognize the 1986 Tierra Colinas final plat approval. Mr. Abeyta referenced the January 21, 2000 letter from the Assistant County Attorney to Mr. Gibbens. Mr. Abeyta stated that Miller had not provided any information that would change the County's opinion that the 1986 plat had expired or been abandoned. Mr. Abeyta also stated that Lot 8 had been split into two plats and recorded subsequent to 1986, thus creating two lots of record, and that the conditions of final plat approval for the 1986 plat had never been met. Specifically, the County had never been supplied with proof of adequate water supply and infrastructure as required. Finally, Mr. Abeyta stated that it was unreasonable to expect the County to allow such a project for which approval had been granted nearly 20 years ago to proceed in light of the development and water availability issues that had arisen since then.

{12} On May 20, 2004, Miller appealed the County Land Use Administrator's decision to the County Development Review Committee (CDRC). CDRC determined that the final plat approval for the 1986 Tierra Colinas subdivision had been abandoned and was expired. CDRC also determined that the 1996 Sun Ranch East master plan approval for Lot 8A had extinguished any prior land use or subdivision approvals for that property. Finally, they determined that the original conditions of approval had never been fulfilled. Therefore, there was never any actual approval and no vested rights to the subdivision.

{13} In July of 2004, Miller appealed the CDRC's decision to the Board. At the hearing, Miller testified that he had met with County Attorney Steve Kopelman and an Assistant County Attorney prior to purchasing Lot 8A and that he had been assured that the 1986 final plat approval for Tierra Colinas was still valid. Miller also testified that he was assured by the Land Use Administrator that the subdivision approvals were still in effect. Miller stated that he relied on a 1993 letter from the then County Attorney,

Terrence Brennan, to Mr. Coughlin (the owner of Lot 8B) in which Brennan stated: "Since Terra Colina [sic] was approved by Santa Fe County as a subdivision in 1986, and since that approval has never been rescinded, amended, or otherwise affected, Santa Fe County recognizes Terra Colina [sic], and the water tabs allocated to it, as a prior subdivision."

{14} The Board unanimously upheld the decision of the CDRC. The Board's letter decision stated that it determined that the 1986 50–lot residential subdivision approval had been abandoned. In its order, the Board stated several bases for its decision. It determined that the 1986 Tierra Colinas unrecorded plat had been abandoned by the action of the previous owners of the Lot 8A. The Board also found that the previous owner demonstrated intent to abandon the plat by dividing Lot 8 into two separate lots in 1988. The Board stated that "[t]he original subdivision could not now be constructed, as half of the property is no longer owned by the Applicant." The Board also stated that the 1996 master plan approval for the Sun Ranch East subdivision differed from the previous subdivision because it had increased density and made other configuration changes. The Board noted that the conditions of the 1986 plat approval were never satisfied. The Board further found that these actions on the part of the previous owners evidenced an intent to abandon seeking final approval of the 1986 plat. The Board also found that the 1986 final plat approval had to be recorded within a reasonable period of time and that approval no longer existed because of the passage of time. Finally, the Board concluded that it was unreasonable for Miller to expect to be exempted from the current moratorium ordinances based on a 20–year–old unrecorded plat.

**District Court Appeal**

{15} Miller appealed the Board's decision to the district court. The district court reversed the Board, determining that there was no legal basis to deny the plat approval. In its final order, the district court found that "[t]he 1986 County Commission final approval for the properly submitted subdivision of Lot 8, Eldorado, Santa Fe, New Mexico, is still in force and effect and has been neither extinguished nor modified." The court determined that obtaining master plan approval for Sun Ranch East subdivision did not extinguish or modify the Tierra Colinas final plat approval, nor did the passage of time affect the Tierra Colinas approval. The court found that the conditions of final approval imposed by the County in 1986 must be satisfied prior to recording, and that all ordinances applicable to existing subdivision approvals which have not obtained final approval status also had to be satisfied. Finally, the court determined that the moratorium ordinance did not operate to prevent recording of the subdivision plat for Lot 8A once the conditions and other ordinances were met.

**DISCUSSION**

**Standard of Review**

{16} "[T]his Court applies the same statutorily defined standard of review as the district court." *Lantz v. Santa Fe Extraterritorial Zoning Auth.*, 2004–NMCA–090, ¶ 5, 136 N.M. 74, 94 P.3d 817. "The district court may reverse an administrative decision only if it determines that the administrative entity … acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the [entity] did not act in accordance with the law." *Gallup Westside Dev., LLC v. City of Gallup*, 2004–NMCA–010, ¶ 10, 135 N.M. 30, 84 P.3d 78. We must also determine "whether the district court erred in the first appeal." *Id.* (internal quotation marks and citation omitted).

{17} On appeal, the Board argues that there was never any final plat approval for the 100–unit subdivision on Lot 8. In the alternative, the Board argues that the 1986 plat approval (1) was extinguished and abandoned by the actions of the owners of Lot 8A; (2) was subject to revocation by the Board for failure to comply with the conditions of approval; and (3) was never vested, and therefore development on Lot 8A is subject to all current ordinances, including the 1996 moratorium ordinance on new developments.

{18} We begin by considering the vested rights doctrine because the corresponding issue is dispositive. Accordingly, we do not reach the other arguments made by the Board urging reversal.

### Vested Rights and the Board's Authority to Revoke Plat Approval

{19} In its order, the Board stated that it could not recognize a purported subdivision on Lot 8A based on the Tierra Colinas plat approval that was 20 years old, unrecorded, and with conditions of approval that had never been fulfilled. The Board also determined that it was unreasonable for Miller to expect to be exempt from the current development moratorium ordinances on the basis of the 20–year–old final plat approval. On appeal, the Board makes several arguments regarding the effect of the passage of time on the viability of the Tierra Colinas plat approval, relying on New Mexico's vested rights doctrine. The Board argues that Miller's rights are not vested, that they expired with the passage of time, that it has the power to revoke the Tierra Colinas plat approval, and last that because his rights are not vested he is subject to all current subdivision regulations, including the moratorium. We first investigate what a vested right is, and we conclude that rights based on the 1986 approval are subject to expiration and revocation. We hold that Miller's rights are not vested. As a result, we further hold that the Board had the authority to revoke its previous plat approval because a reasonable period of time had passed with the original conditions of approval not having been met.

### A. Vested rights depend on written approval and substantial change in position in reliance on approval.

{20} "[I]n New Mexico, the vested rights doctrine applies to an ongoing development or project that has been approved and upon which substantial investment has been made." *KOB–TV, LLC v. City of Albuquerque*, 2005–NMCA–049, ¶ 13, 137 N.M. 388, 111 P.3d 708. "The vested rights doctrine allows the development or project to be completed and operated in accordance with the regulations in effect at the time of approval

and substantial investment. Thus, the vested rights doctrine is used in those instances in which there is work in progress when a change in land use regulations goes into effect." *Id.* (internal citations omitted). "In order to establish a vested use so as to exempt property from the necessity of complying with applicable land use regulations, as a general rule, a party asserting a prior vested right must establish two factors: (1) issuance of written approval to the applicant for the proposed subdivision or construction project; and (2) a substantial change in position by the applicant in reliance upon such approval." *Sandoval County Bd. of Comm'rs v. Ruiz*, 119 N.M. 586, 589, 893 P.2d 482, 485 (Ct.App.1995); *see also El Dorado at Santa Fe, Inc. v. Bd. of County Comm'rs of Santa Fe County*, 89 N.M. 313, 319, 551 P.2d 1360, 1366 ("Upon compliance with the statutory prerequisites to subdivision and sale by a subdivider, followed by a determination of the board of county commissioners that such compliance had in fact occurred, rights vest in the subdivider which cannot thereafter be withheld, extinguished or modified except upon due process of law."). Additionally, the reliance must be reasonable. *See Gallup Westside Dev., LLC*, 2004–NMCA–010, ¶ 18, 135 N.M. 30, 84 P.3d 78.

### 1. Written approval

{21} The Board argues that Miller cannot show either prong of the vested rights analysis. The Board first argues that Miller cannot show written approval for the subdivision. Miller relies on the minutes of the May 1986 board meeting at which the Board gave final plat approval for the Tierra Colinas subdivision on Lot 8. Miller argues that the minutes were recorded in the records of the County Clerk to show written approval. Miller also points to the May 14, 1986 letter from Ernest Martinez (land use administrator) to David Schutz in which Mr. Martinez stated that the Board had decided to give final plat approval for Tierra Colinas subject to conditions.

{22} The Board does not state what would constitute written approval, nor does it argue that the recorded minutes of the board meeting are insufficient to constitute written ap-

proval. Because we determine next that Miller is unable to establish that he made a substantial and reasonable change in position in reliance on the approval of the Tierra Colinas subdivision, we defer decision on what constitutes adequate written approval to vest property rights in a subdivision plan.

## 2. Miller cannot establish a substantial change in position in reliance on the Tierra Colinas subdivision.

{23} Under the circumstances of this case, Miller has not established that he meets the second prong of the analysis: that he made a substantial and reasonable change in position in reliance on the approval. Miller purchased Lot 8A in March 2003, seventeen years after the Board granted final plat approval for the Tierra Colinas subdivision. Miller argues that he relied on the representations of the then County Attorney and Assistant County Attorney that the Tierra Colinas approval was valid as an approval for a subdivision on Lot 8A. Miller also argues that in addition to purchasing the property, he expended money on engineering drawings and obligated himself for several hundred thousand dollars in contracts for utility costs.

{24} Miller's argument that he purchased the property in reliance on representations of county officials that the Tierra Colinas plat approval was valid is not sufficient to establish reliance under the vested rights doctrine. Language in *Gallup Westside* suggests that a developer incurring extensive contractual obligations *pursuant* to the purchase of property might be sufficient to confer vested rights. *Gallup Westside Dev., LLC*, 2004–NMCA–010, ¶ 18, 135 N.M. 30, 84 P.3d 78 (emphasis added). However, the substantial change in position must be reasonable. *See id.* ¶ 18. The purchase of land alone is insufficient to confer vested rights on the purchaser, *see id.*, and Miller's sole reliance on the county officials' statements is belied by the parties' actions.

{25} The November 18, 1993 letter from Terrence Brennan to the owner of Lot 8B, in which he stated that the Tierra Colinas approval had never been rescinded, amended, or otherwise affected and that the County recognized it as a prior subdivision was con-

tradicted some seven years later when the County informed Mr. Gibbens, Miller's predecessor in interest, by letter in January of 2000 that it did not consider the final plat approval for the subdivision to be valid. Miller does not argue that he was not aware of the County's position when he purchased the property and entered into contracts for utilities.

{26} By the time Miller purchased Lot 8A and entered into contracts for utility services, he knew that the original Tierra Colinas plat approval was conditional and that the conditions of approval had not been met. The land sales contract for Lot 8A between Miller and its previous owner states that the property was sold "as is" and recites that there had been a diminution in the value of the property based on wrongful conduct on the part of the Santa Fe County and others, which resulted in the imposition of a moratorium ordinance. Accordingly, Miller cannot show reasonable reliance on the Tierra Colinas approval. Given all these circumstances, Miller's reliance on the Tierra Colinas plat approval was not reasonable, and therefore Miller does not have vested rights. *See id.* ("We see no substantial evidence in the record that ties such asserted actions to any governmental assurances to support reasonable, actual reliance or change in position.").

{27} The vested rights doctrine operates to exempt a developer from compliance with regulations and laws enacted subsequent to the rights vesting. *See e.g., Cerrillos Gravel Prods., Inc. v. Santa Fe Bd. of County Comm'rs*, 2005–NMSC–023, ¶¶ 22–23, 138 N.M. 126, 138 N.M. 126, 117 P.3d 932 (holding that the vested rights doctrine did not prevent the County from enforcing its regulations on existing mine operations); *Gallup Westside Dev., LLC*, 2004–NMCA–010, ¶ 21, 135 N.M. 30, 84 P.3d 78 (holding that a final plat approval did not give vested rights to prevent application of current subdivision regulations); *In the Matter of Sundance Mountain Ranches, Inc.*, 107 N.M. 192, 194, 754 P.2d 1211, 1213 (Ct.App.1988) (applying a vested right analysis to hold that ordinances and regulations in effect at the time of subdivision application applied to ongoing development of proposed subdivision); *Brazos Land,*

*Inc. v. Bd. of County Comm'rs,* 115 N.M. 168, 170, 848 P.2d 1095, 1097 (Ct.App.1993) (applying vested rights analysis to determine that new zoning ordinance did apply to proposed subdivision because there was no approval of the application or substantial reliance or changing position by the developer).

{28} Miller's rights are not vested. Because Miller does not have vested rights in the subdivision, he is not exempt from the general rule that a landowner must comply with all applicable law and regulations at the time of development, including the moratorium ordinances. *See KOB–TV, LLC,* 2005–NMCA–049, ¶ 14, 137 N.M. 388, 111 P.3d 708. This conclusion, however, does not resolve the question of whether the Board had the authority to revoke the 1986 plat approval. We have not previously decided whether the lack of vested rights alone is a sufficient basis for revocation of a previously approved final subdivision plat. There are also no New Mexico cases dealing with the passage of time as affecting a subdivision plat approval.

## B. Authority to revoke the plat

■ {29} Miller argues that because the Board did not revoke the Tierra Colinas plat approval, it was reasonable to rely on the approval. The Board's position is that because Miller does not have vested rights in the Tierra Colinas subdivision, the Board had authority to revoke the plat approval. The Board also argues that the passage of more than 18 years from the original approval in the absence of vested rights renders the plat approval invalid for a subdivision on Lot 8A.

### 1. County could revoke because conditions were not met.

{30} The Board argues that even though the plat approval was at one time valid, because there are no vested rights in the Tierra Colinas approval, it has the authority to revoke the approval based on the failure to comply with conditions of approval. The Board relies on NMSA 1978, § 47–6–25 (1995), under the New Mexico Subdivision Act, which states: "The board of county commissioners may suspend or revoke approval of a plat as to the unsold, unleased or other-

wise unconveyed portions of a subdivider's plat if the subdivider does not meet the schedule of compliance approved by the board." The Board acknowledges that the 1986 final plat approval did not specify a time for compliance with the conditions attached to approval. However, the Board argues that under *Gallup Westside,* a reasonable time for compliance with the conditions of approval can be implied. *Gallup Westside Dev., LLC,* 2004–NMCA–010, ¶ 16, 135 N.M. 30, 84 P.3d 78. In *Gallup Westside,* the City gave final plat approval for a subdivision in 1975. *Id.* ¶ 2. The final plat approval was expressly conditioned on the developer's compliance with the terms of the Assessment Procedure Agreement (APA). *Id.* ¶ 3. Although some initial road grading and installation of utilities was done, Westside did not attempt to develop the property until 1996, at which time the original APA had expired. *Id.* ¶ 5. The city decided to extend the APA but to also amend it to require compliance with current building standards and practices. *Id.* Westside argued that it should not have to comply with the current regulations. *Id.* ¶ 6.

{31} On appeal, the issue was whether Westside had vested rights under the original APA. *Id.* ¶¶ 12, 13. This Court held that Westside did not have vested rights because although the City had granted final plat approval, the approval was conditioned on compliance with the terms of the APA, and the APA allowed for the City to vacate the final plat approval if the conditions were not met. *Id.* ¶ 14 ("[T]he first prong of the vested rights doctrine is not met as long as revocation of that approval remains a possibility."). Under the terms of the APA and the applicable subdivision regulations, approval was conditioned on the developer providing assurances for the installation of public improvements. *Id.* ¶ 16. The Court held that, although there was no specified time for performance under the method chosen, it was reasonable to construe that the method did require performance within a reasonable period of time. *Id.* The Court also determined that twenty years was a reasonable time in which to have complied. *Id.*

## 2. County could revoke if substantial time had passed without action.

{32} In 2000, Mr. Gibbens was informed that the County would not recognize the Tierra Colinas plat approval as valid, in part because there had not been compliance with the conditions of approval. This occurred fourteen years after the approval of Tierra Colinas. In *Parker*, the county suspended a plat approval because the developer failed to meet a deadline for surfacing all roads. *Parker v. Bd. of County Comm'rs*, 93 N.M. 641, 642, 603 P.2d 1098, 1099 (1979). The county had enacted a regulation that allowed it to suspend or revoke a subdivision plat approval because of a failure to comply with county regulations. *Id.* The Court in *Parker* determined that even after approval of a subdivision, Section 47–6–25 [1] "clearly allows a county to revoke or suspend that approval for failure of the developer to comply with a schedule of compliance." *Parker*, 93 N.M. at 643, 603 P.2d at 1100. The Court also stated:

> We cannot equate the approved subdivision plat in this case with vested property rights, as the approval was conditioned upon performance by the subdivider. Suspension or revocation of plat approval remain realities for the developer until he complies with the reasonable conditions imposed by the county within its authority. The appellant failed to accomplish the conditions he agreed to accomplish and which were required by the county as a prerequisite to plat approval.

*Id.* at 644, 603 P.2d at 1101. In this case, the Board has noted a similar provision that appears in the Santa Fe County Subdivision Regulations and was not included in the record proper.

{33} Applying Section 47–6–25 and *Cerrillos Gravel Prods., Inc.*, 2005–NMSC–023, ¶¶ 22–24, 138 N.M. 126, 117 P.3d 932, we hold that compliance with the conditions of final approval did not occur within a reasonable period of time and that the Board can revoke the Tierra Colinas approval. Although it did not specifically address the issue of revocation, the Board determined that the plat approval was invalid. "[A] court may uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Rio Grande Chapter of the Sierra Club v. New Mexico Mining Comm'n*, 2003–NMSC–005, ¶ 13, 133 N.M. 97, 61 P.3d 806 (internal quotation marks and citation omitted).

## CONCLUSION

{34} Because we conclude that Miller's rights were not vested and that the Board had the authority to revoke the 1986 plat approval, we need not address whether that approval was extinguished or abandoned. We reverse the district court, and we remand for proceedings consistent with this opinion.

{35} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CELIA FOY CASTILLO, Judges.

---

1. *Parker* was decided under former Section 47–6–25: "The board of county commissioners may suspend or revoke approval of a plat as to the unsold or unleased portions of a subdivider's plat if the subdivider does not meet the schedule of compliance approved by the board." *Id.* at 643, 603 P.2d at 1100.