IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMCA-008

Filing Date: March 9, 2015

Docket No. 34,499

SANDRA K. PEREZ,

        Petitioner-Petitioner,

v.

NEW MEXICO DEPARTMENT OF
WORKFORCE SOLUTIONS and NEW
MEXICO STATE PERSONNEL OFFICE,

        Respondents-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
Valerie Ann Huling, District Judge

Youtz & Valdez, P.C.
Stephen Curtice
James A. Montalbano
Shane Youtz
Albuquerque, NM

for Petitioner

Marshall J. Ray, General Counsel
Rudolph Preston Arnold, Deputy General Counsel
Albuquerque, NM

for Respondent New Mexico Department of Workforce Solutions

Law Office of Jason Lewis
Jason J. Lewis
Albuquerque, NM

for Respondent New Mexico State Personnel Office

**Consolidated with:**

1

**Docket No. 34,880**

**DEBRA GRIEGO,**

       **Petitioner-Appellant,**

**v.**

**NEW MEXICO DEPARTMENT OF**
**WORKFORCE SOLUTIONS and NEW**
**MEXICO DEPARTMENT OF FINANCE**
**AND ADMINISTRATION,**

       **Respondents-Appellees.**

**Consolidated with:**

**INDIA HATCH,**

       **Petitioner-Appellee,**

**v.**

**NEW MEXICO DEPARTMENT OF**
**WORKFORCE SOLUTIONS and**
**NEW MEXICO RACING COMMISSION,**

       **Respondents-Appellants.**

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Sarah M. Singleton and Sarah C. Backus, District Judges**

Debra Griego
Santa Fe, NM

Pro Se Appellant

Marshall J. Ray, General Counsel
Rudolph Preston Arnold, Deputy General Counsel
Albuquerque, NM

for Appellees/Appellants New Mexico Department of Workforce Solutions and
New Mexico Racing Commission

Caldwell Law Firm, L.L.C.
Joseph E. Caldwell
El Prado, NM

for Appellee India Hatch

**OPINION**

**CHÁVEZ, Justice.**

**{1}** In these consolidated cases, the New Mexico Department of Workforce Solutions (Department) denied three former State of New Mexico employees (Claimants) unemployment compensation benefits, relying on NMSA 1978, Section 51-1-44(A)(5)(a) (1978). Section 51-1-44(A)(5)(a) provides that unemployment compensation benefits are not available for a state government employee who works "in a position which, under or pursuant to state law, *is designated as . . .* a major nontenured policy-making or advisory position." *Id.* (emphasis added). We interpret this language to require the Legislature to expressly designate which nontenured positions are major policy-making or advisory positions. Although not the ideal approach, the Legislature can accomplish this designation by statutorily defining the job responsibilities of a particular position to make it clear that the nontenured position is a major policy-making or advisory position. Because the Legislature has not designated any of the three positions as major nontenured policy-making or advisory positions, we hold that all three Claimants are eligible for unemployment compensation benefits.

## I.    BACKGROUND

**{2}** These consolidated cases involve three former State of New Mexico employees. Sandra Perez (Perez) was the state personnel director of the New Mexico State Personnel Office (State Personnel Office) from August 17, 2004 through February 19, 2011. The State Personnel Board of the State Personnel Office hired Perez to the position with the approval of former Governor Bill Richardson. *See* NMSA 1978, § 10-9-10(C) (1983) (providing that the State Personnel Board shall "hire, with the approval of the governor, a director experienced in the field of personnel administration"). The State Personnel Board "is a public administrative body" with "the power to promulgate rules to carry out the provisions of the Personnel Act [NMSA 1978, §§ 10-9-1 to -25 (1961, as amended through 2009)] and to hear appeals by state employees aggrieved by an agency's action affecting their employment." *Martinez v. N.M. State Eng'r Office*, 2000-NMCA-074, ¶ 22, 129 N.M. 413, 9 P.3d 657. Accordingly, the State Personnel Board has "both policy-making and quasi-judicial responsibilities." *Id.* As the state personnel director, Perez served the State of New Mexico at the pleasure of the State Personnel Board.

**{3}** Dorothy Griego (Griego) was the administrative services division director and the chief financial officer of the New Mexico Department of Finance and Administration (DFA)

3

from January 1, 2003 through December 31, 2010. "The purpose of the Department of Finance and Administration Act is to make state government more efficient and responsive . . . and to establish a single, unified department to administer laws relating to finance of state government; and to perform other duties as provided by law." NMSA 1978, § 9-6-2 (1983). The DFA cabinet secretary is the administrative and executive head of the DFA, and is a member of the executive cabinet. NMSA 1978, § 9-6-4 (1983). The DFA cabinet secretary presumably appointed Griego as the administrative services division director and chief financial officer of the DFA with the approval of former Governor Richardson. *See* NMSA 1978, § 9-1-4(A)(2) (1977) ("[T]he principal unit of a department is a 'division,' headed by a 'director,' who shall be appointed by the secretary with the approval of the governor and who shall serve at the secretary's pleasure.").

{4}     India Hatch (Hatch) was the executive director of the New Mexico Racing Commission (Racing Commission) from September 4, 2010 through September 12, 2011. The Racing Commission consists of five members "appointed by the governor and . . . confirmed by the senate." NMSA 1978, § 60-1A-3(B) (2007). The New Mexico Horse Racing Act (Horse Racing Act), NMSA 1978, §§ 60-1A-1 to -30 (2007, as amended through 2011), governs horse racing in New Mexico. The Horse Racing Act grants the Racing Commission administrative authority over the regulation of horse racing in New Mexico. *See* § 60-1A-4 (establishing the powers and duties of the Racing Commission); § 60-1A-5 (granting the Racing Commission rulemaking authority and adjudicatory authority to suspend, revoke, and deny occupational and racetrack licenses); § 60-1A-7 (granting the Racing Commission authority over horse racing licensure). The Racing Commission appointed Hatch as its executive director. *See* § 60-1A-3(H) (providing that the members of the Racing Commission "may appoint an executive director and establish the executive director's duties and compensation").

{5}     All three Claimants were terminated following Governor Susana Martinez's first election as the governor of the State of New Mexico. All three Claimants applied to the Department for unemployment compensation benefits. The Department initially awarded unemployment compensation benefits to Perez and Griego, but denied such benefits to Hatch. However, after additional review, the Department ultimately determined that all three Claimants held major nontenured policy-making or advisory positions that are ineligible for unemployment compensation benefits pursuant to Section 51-1-44(A)(5)(a). All three Claimants appealed individually to separate district courts. The district court presiding over Griego's appeal affirmed the Department's determination, while the district courts that presided over the appeals of Perez and Hatch reversed each of the Department's determinations.

{6}     The losing party in each case appealed to the New Mexico Court of Appeals. The Court of Appeals issued a majority opinion in Perez's appeal that reversed the district court and reinstated the Department's final determination denying Perez unemployment compensation benefits. *N.M. Dep't of Workforce Solutions v. Perez*, 2014-NMCA-035, ¶ 26, 320 P.3d 1001. The Court of Appeals consolidated the appeals by Griego and Hatch, and

4

following oral argument, each judge on the panel assigned to the consolidated appeal approached the case differently with varying results, which we will describe later in this opinion. *See Griego v. N.M. Dep't of Workforce Solutions*, No. 32,556, *consolidated with Hatch v. N.M. Dep't of Workforce Solutions*, No. 32,963, Order of Certification to the New Mexico Supreme Court (N.M. Ct. App. Sept. 3, 2014) (attaching Exhibit 1 (Vigil, J., proposed op.), Ex. Exhibit 2 (Bustamante, J., proposed op.), and Exhibit 3 (Sutin, J., proposed op.)).

**{7}**     Perez filed a petition for writ of certiorari and the Court of Appeals requested certification of the consolidated cases in *Griego* and *Hatch* to this Court. *Griego v. N.M. Dep't of Workforce Solutions*, No. 34,880, Order of Certification to the New Mexico Supreme Court at 4-6 (N.M. Ct. App. Sept. 3, 2014). We granted certiorari in *Perez v. N.M. Dep't of Workforce Solutions*, 2014-NMCERT-002, and accepted certification in *Griego* and *Hatch*. *Griego*, No. 34,880, Order of Certification to the New Mexico Supreme Court accepted (N.M. Sup. Ct. Sept. 29, 2014). Following oral argument, this Court consolidated all three cases.

## II.     DISCUSSION

**{8}**     The issue common to these cases on appeal stems from administrative determinations concerning whether Claimants' former positions were "designated as . . . major nontenured policy-making or advisory position[s]" pursuant to Section 51-1-44(A)(5)(a). Our review of an administrative decision applies "the same statutorily defined standard of review as the district court." *Miller v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2008-NMCA-124, ¶ 16, 144 N.M. 841, 192 P.3d 1218 (internal quotation marks and citation omitted). "The district court may reverse an administrative decision only if it determines that the administrative entity . . . acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the [entity] did not act in accordance with the law." *Id*. (alteration and omission in original) (internal quotation marks and citation omitted).

**{9}**     Because the issue before this Court is one of statutory construction, we are asked to review whether the administrative decisions were "in accordance with the law." *Id*. (internal quotation marks and citation omitted). "If an agency decision is based upon the interpretation of a particular statute, the court will accord some deference to the agency's interpretation, especially if the legal question implicates agency expertise." *Fitzhugh v. N.M. Dep't of Labor, Emp't Sec. Div.*, 1996-NMSC-044, ¶ 22, 122 N.M. 173, 922 P.2d 555. "However, the court may always substitute its interpretation of the law for that of the agency's because it is the function of the courts to interpret the law." *Id.* (internal quotation marks and citation omitted).

**A.     For an employee in a state government position to be ineligible for unemployment compensation benefits, the Legislature must expressly designate that position as a major nontenured policy-making or advisory position**

5

**{10}** Pursuant to the New Mexico Unemployment Compensation Law, NMSA 1978, Sections 51-1-1 to -59 (1978, as amended through 2010), unemployment compensation benefits are not available for services performed by an individual in the employment of a government entity who is "in a position which, under or pursuant to state law, *is designated as* . . . a major nontenured policy-making or advisory position." Section 51-1-44(A)(5)(a) (emphasis added). For an employee in a state government position to be ineligible for unemployment compensation benefits, legislation must expressly (1) designate that position as a nontenured position, and (2) designate the position as *either* a major policy-making position *or* a major advisory position. *Id*. All three Claimants concede that their former positions were nontenured positions. *See* § 10-9-4(C), (D) (designating "heads of agencies appointed by boards or commissions" and "directors of department divisions" as nontenured state employees excluded from protection under the dismissal and demotion rules provided in Section 10-9-13(H) of the State Personnel Act). Accordingly, the sole issue before this Court is whether Claimants' former positions were designated by the Legislature as either major nontenured policy-making positions or major nontenured advisory positions. Section 51-1-44(A)(5)(a).

**{11}** The Legislature enacted Section 51-1-3 of the Unemployment Compensation Law to serve as "a guide to the interpretation and application of" the Unemployment Compensation Law. Pursuant to Section 51-1-3, the general rule is that every employee in New Mexico is eligible for unemployment compensation benefits unless the Legislature designates a certain position ineligible for those benefits. *Compare* § 51-1-3 (stating that the public good mandates the "setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own"), *with* § 51-1-44(A)(5) (noting certain positions that are exempt from receiving unemployment benefits).

**{12}** Consistent with Section 51-1-3, this Court construes the Unemployment Compensation Law liberally in favor of employees to afford them the benefits intended by law. *See Emp't Sec. Comm'n v. C. R. Davis Contracting Co.*, 1969-NMSC-174, ¶ 13, 81 N.M. 23, 462 P.2d 608 (recognizing that the Unemployment Compensation Law "is remedial legislation that calls for a liberal construction to the end that humanitarian purposes may be given effect."). Conversely, this Court narrowly construes exemptions under the Unemployment Compensation Law. *See Peisker v. Unemployment Comp. Comm'n*, 1941-NMSC-031, ¶ 7, 45 N.M. 307, 115 P.2d 62 (stating that an employer claiming an exemption from the unemployment tax carries a heavy burden because granting an exemption from the tax is strictly construed against the employer); *see also Samosa v. Lopez*, 1914-NMSC-061, ¶ 13, 19 N.M. 312, 142 P. 927 ("It is a well-established rule of construction that a statute of exemption from taxation must receive a strict construction, and no claim of exemption should be sustained, unless within the express letter or the necessary scope of the exemption clause.").

**{13}** The Department argues that Section 51-1-44(A)(5)(a) requires a factual analysis of Claimants' former daily employment duties to determine whether Claimants held major nontenured policy-making or advisory positions that are ineligible for unemployment

compensation benefits. We disagree. The plain language of Section 51-1-44(A)(5)(a) requires a purely legal analysis regarding whether the Legislature has "under or pursuant to state law, . . . designated" a position as "a major nontenured policy-making or advisory position." *See N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105 ("We look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended."). Accordingly, we interpret the plain language of Section 51-1-44(A)(5)(a) as requiring the Legislature to expressly designate which nontenured state government positions are major policy-making or advisory positions.

**{14}**    In these consolidated cases, the New Mexico Court of Appeals identified different approaches by which the Legislature could designate which nontenured state government positions are major policy-making or advisory positions. In *Perez*, the majority focused on the statutory duties of the personnel director as specified in Section 10-9-12, and concluded that the specification satisfies the language "designated as" in Section 51-1-44(A)(5). 2014-NMCA-035, ¶ 25. The majority also concluded that "the personnel director's broadly designated [statutory] duties to supervise and recommend along with the director's advisory responsibilities can be considered major because they are notable, conspicuous in effect and scope, important, significant, and a major part and aspect of the personnel director's full gamut of duty." *Id.*

**{15}**    In the consolidated appeals of Griego and Hatch, each judge on the panel offered a different approach as to how the Legislature could make the designation. Judge Vigil would require the designation to be "expressly set forth in a statute, rule, regulation, or executive order." *Griego*, No. 32,556, *consolidated with* No. 32,963, Order of Certification to the New Mexico Supreme Court, Ex. 1, ¶ 6 (Vigil, J., proposed op.). Judge Vigil would reject an approach that would require a fact-finder to examine what the employee actually did, and would also decline to consider job descriptions. *Id*. Judge Bustamante would rely on the Executive Reorganization Act, NMSA 1978, Sections 9-1-1 to -13 (1977, as amended through 1983), and would hold that all nontenured positions at or above division director are not eligible for unemployment compensation. *Griego*, No. 32,556, *consolidated with* No. 32,963, Order of Certification to the New Mexico Supreme Court, Ex. 2 (Bustamante, J., proposed op.). Judge Sutin would not consider regulations, rules, or executive orders, but would interpret statutory job descriptions to determine whether the job description evinces a legislative intent to designate a position as a major policy-making or advisory position. *Id*., Ex. 3 (Sutin, J., proposed op.).

**{16}**    In addition to the suggestions from the Court of Appeals, we have reviewed how other states have designated nontenured positions as major policy-making or advisory positions, and we have identified four basic approaches. First, the Legislature could identify by title the nontenured positions it intends to be major nontenured policy-making or advisory positions. Second, the Legislature could define the terms "major," "nontenured," "policy-making," and "advisory position." Third, the Legislature could delegate to employing executive branch offices or administrative agencies its authority to prospectively designate

positions as major nontenured policy-making or advisory positions. Fourth, the Legislature could define the duties of nontenured employees to reveal which positions have major policy-making and advisory roles. We discuss each of these approaches in the following subsections.

**1.** ***The Legislature may enact legislation that identifies by title the positions it designates as major nontenured policy-making or advisory positions pursuant to Section 51-1-44(A)(5)(a)***

**{17}** A statute identifying by title the positions that are designated major nontenured policy-making or advisory positions would provide the Department and courts with the simplest way to determine the Legislature's intent under Section 51-1-44(A)(5)(a). *See Diamond v. Diamond*, 2012-NMSC-022, ¶ 25, 283 P.3d 260 ("Where the language of a statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citations omitted)). For example, the Minnesota Unemployment Insurance Law provides that eligible positions for unemployment compensation purposes do not include "employment for Minnesota that is a major policy-making or advisory position in the unclassified service," Minn. Stat. Ann. § 268.035(20)(15) (West 2010), and "employment for a political subdivision of Minnesota that is a major nontenured policy making or advisory position." Minn. Stat. Ann. § 268.035(20)(16). The Minnesota State Personnel Management Act, Minn. Stat. Ann. § 43A.001 to 43A.55 (West 1981, as amended through 2010), exhaustively specifies which positions are designated as "unclassified." Minn. Stat. Ann. § 43A.08. The relevant positions that are ineligible for unemployment compensation benefits under the Minnesota State Personnel Management Act and Unemployment Insurance Law are "*executive or administrative heads* of departments, bureaus, divisions, and institutions specifically established by law in the unclassified service," Minn. Stat. Ann. § 43A.08(2) (emphasis added), and "*executive directors* or executive secretaries appointed by and *reporting to any policy-making board or commission established by statute*." Minn. Stat. Ann. § 43A.08(16) (emphasis added).

**{18}** The Department argues that our Legislature has enacted similar legislation that designates Claimants' former positions as major policy-making or advisory positions. Specifically, the Department maintains that the Legislature has designated all nontenured positions that are exempt from coverage under the Personnel Act as major policy-making or advisory positions and therefore ineligible for unemployment compensation benefits, citing our opinion in *State ex rel. Duran v. Anaya*, 1985-NMSC-044, 102 N.M. 609, 698 P.2d 882. We disagree.

**{19}** In *Duran*, former members of the State Board of Barber Examiners who had been removed from their positions by former Governor Toney Anaya argued that they had a protected property interest in their positions. *Id.* ¶¶ 2, 11. The former members maintained that they were entitled to both "notice and [a] hearing prior to the deprivation caused by the Governor's actions in removing them from the Board, prior to the expiration of their terms."

*Id*. ¶ 11. This Court disagreed, noting that "the members of the State Board of Barber Examiners are policy-making persons and a policy-making public servant has no property interest in his [or her] position." *Id*. As a result, this Court concluded that by "exempting members of boards and commissions and agency heads from the Personnel Act, . . . the Legislature acknowledges that such policy-making positions are different from other types of employment positions and that such categor[ies] of persons are not entitled to hearings before removal from their positions." *Id*.

**{20}**     A brief description of the provisions of the Personnel Act that were at issue in *Duran* helps explain our holding in *Duran*. The Personnel Act sets forth the procedural elements for dismissal or demotion of government employees. Section 10-9-13(H). The Personnel Act exempts certain positions from coverage under these procedures, and thereby makes the positions nontenured "with no expectation of continued employment." *Swinney v. Deming Bd. of Educ.*, 1994-NMSC-039, ¶ 7, 117 N.M. 492, 873 P.2d 238 (clarifying the status of an exempt government employee discharged under the New Mexico School Personnel Act); *see* § 10-9-4 (specifying categories of exempt government positions). Excluded from coverage under the Personnel Act and relevant to our inquiry are "B. members of boards and commissions and heads of agencies appointed by the governor; C. heads of agencies appointed by boards or commissions; [and] D. directors of department divisions." Section 10-9-4. However, these provisions simply mean that the excluded positions are nontenured positions that do not have the protections of the dismissal or demotion procedures of the Personnel Act.

**{21}**     *Duran* is inapplicable to this case because Claimants concede that their former positions were nontenured pursuant to the Personnel Act. To be ineligible for unemployment compensation benefits under Section 51-1-44(A)(5)(a), a nontenured position must *also* be expressly designated under or pursuant to state law as either (1) a major policy-making position or (2) a major advisory position. Section 51-1-44(A)(5)(a). Because Section 51-1-44(A)(5)(a) was not at issue in *Duran*, the court's observation that state employees holding certain "policy-making positions" are exempt from the Personnel Act is immaterial to our analysis. *See* 1985-NMSC-044, ¶ 11. While Claimants' former positions are excluded from coverage under the Personnel Act, the Department still has the burden of proving that Claimants' former positions were designated as either (1) major policy-making positions or (2) major advisory positions. Section 51-1-44(A)(5)(a). If the Legislature intended every position exempt from the Personnel Act to also be ineligible for unemployment compensation benefits, it could have easily and expressly done so in order to meet the requirements of Section 51-1-44(A)(5)(a).

**{22}**     Our Legislature has not enacted legislation that identifies by title the positions it designates as major nontenured policy-making or advisory positions. As a result, the Department's reliance on *Duran* and the example provided by the Minnesota Unemployment Insurance Law are inapplicable to these consolidated cases.

**2.      *The Legislature could define the terms "major," "nontenured," "policy-making,"***

*and "advisory position" as expressed under Section 51-1-44(A)(5)(a)*

**{23}** The Legislature may designate which nontenured positions are major policy-making or advisory positions by enacting legislation that adequately defines the key terms in Section 51-1-44(A)(5)(a). Definitions for "major," "nontenured," "policy-making," and "advisory position" would provide much needed context for interpreting Section 51-1-44(A)(5)(a).

**{24}** For example, the Iowa Administrative Code provides definitions for the terms "major," "nontenured," "policymaker," and "advisory position." Iowa Admin. Code r. 871—23.71(96)(3) (2014).

> The word "major" in the phrase "major nontenured policymaking or advisory position" refers to high level governmental positions usually filled by appointment by the chief executive of the political entity (governor, mayor, etc.), or a council, and which involves responsibilities affecting the entire political entity, whether it be the state, county or city.

Iowa Admin. Code r. 871—23.71(96)(3)(b)(3). "The term 'nontenured' is used in its usual meaning to mean that the position is not covered by merit system or civil service law or rules with respect to duration of appointment to the service." Iowa Admin. Code r. 871—23.71(96)(3)(b)(4). " 'Policymaker' is defined as generally referring to the determination of the direction, emphasis and scope of action in the development of, and the administration of, governmental programs. Such responsibilities are confined to and inherent in jobs of the higher echelons of government." Iowa Admin. Code r. 871—23.71(96)(3)(b)(1). Finally, "[a]n 'advisory position' is one which advises established governmental agencies and officers with respect to policy, program and administration without having authority to implement the recommendations." Iowa Admin. Code r. 871—23.71(96)(3)(b)(2).

**{25}** Our Legislature has not defined the terms in Section 51-1-44(A)(5)(a) of the Unemployment Compensation Law. *See* §§ 51-1-1 to -59. Our analysis in these consolidated cases would greatly benefit from legislation that defined the key terms in Section 51-1-44(A)(5)(a) in a manner analogous to the definitions provided in the Iowa Administrative Code. However, this approach is inapplicable here because our Legislature has yet to define the key terms in Section 51-1-44(A)(5)(a).

**3.** ***The Legislature could delegate authority under Section 51-1-44(A)(5)(a) to the executive branch or administrative agencies***

**{26}** The Legislature could make it clear that designations "under or pursuant to state law" also authorize the executive branch, boards, commissions, or other administrative agencies to designate which positions are major nontenured policy-making or advisory positions that are ineligible for unemployment compensation. This is the approach followed in Pennsylvania. Pennsylvania courts have interpreted that state's unemployment compensation

laws to permit designations of state government positions as major policy-making or advisory positions to be by "statute, regulation, executive order or the like," provided such designations are "made by an official or entity with authority to set such terms." *Odato v. Unemployment Comp. Bd. of Review*, 805 A.2d 660, 662 (Pa. Commw. Ct. 2002) (internal quotation marks and citations omitted); *see, e.g.*, *Mandel v. Unemployment Comp. Bd. of Review*, No. 258 C.D.2012, 2013 WL 3942184, mem. op. at *2, *7 (Pa. Commw. Ct. Mar. 18, 2013) (non-precedential) (recognizing a management directive issued by the Pennsylvania Governor's Office which set forth the positions designated by the Governor's Office as "major nontenured policymaking or advisory positions"). An important consideration is that the employee knows in advance of accepting employment as a nontenured employee that once terminated, he or she will not be eligible for unemployment compensation. *See Odato*, 805 A.2d at 663 (recognizing that the designation provides "an official signpost which informs the jobholder, upon assuming the position, of what can be expected." (internal quotation marks and citation omitted)).

**{27}**     We interpret "state law" in Section 51-1-44(A)(5)(a) to mean a statute enacted by the Legislature. Section 51-1-44(A)(5)(a) grants the Legislature exclusive authority to designate which nontenured positions are major policy-making or advisory positions. This authority is exclusive to the Legislature until it enacts legislation that delegates its authority under Section 51-1-44(A)(5)(a) to the executive branch, a board, commission, or administrative agency. Because the Legislature has not enacted such legislation, the Pennsylvania cases evaluating regulations and executive orders are not helpful here. We now turn to the fourth example of how the Legislature could expressly designate positions as major nontenured policy-making or advisory positions.

4.     ***The Legislature could define the statutory duties of a position which could be interpreted by the Department or the courts to reflect a legislative intent to designate the position as a major nontenured policy-making or advisory position***

**{28}**     Although the Legislature has not followed any of the preceding approaches for designating which positions are major nontenured policy-making or advisory positions, it has on occasion enacted legislation describing the duties and responsibilities of particular positions. Because "[o]ur principal goal in interpreting statutes is to give effect to the Legislature's intent," *Griego v. Oliver*, 2014-NMSC-003, ¶ 20, 316 P.3d 865, we conclude that interpreting statutory job descriptions could evince a legislative intent to make the requisite designations under the Unemployment Compensation Law.

**{29}**     With respect to major policy-making positions, we have recognized that in addition to the Legislature, which as the voice of the people makes public policy, "[e]lected executive officials and executive agencies also make policy, [but] to a lesser extent, [and only] as authorized by the constitution or legislature." *State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 21, 125 N.M. 343, 961 P.2d 768 (second and third alterations in original) (internal quotation marks and citation omitted). The Executive Reorganization Act creates an executive cabinet which is "headed by the governor and consist[s] of, but [is] not

11

limited to, the lieutenant governor, and the secretaries of such departments as are hereafter created and designated as 'cabinet departments' pursuant to law." Section 9-1-3(A). Section 9-1-3(B)-(C) describes the duties of the executive cabinet.

> B.    The cabinet shall:
>
> (1)    *advise the governor on problems of state government*;
>
> (2)    establish liaison and provide communication between the executive departments and state elected officials;
>
> (3)    *investigate problems of public policy*;
>
> (4)    study government performance and *recommend methods of interagency cooperation*;
>
> (5)    *review policy problems and recommend solutions*;
>
> (6)    strive to minimize and eliminate overlapping jurisdictions and conflicts within the executive branch; and
>
> (7)    *assist the governor in defining policies* and programs to make the government *responsive to the needs of the people*.

*Id*. (emphasis added). In addition, the Executive Reorganization Act requires the governor to "*seek the advice of the cabinet members*." Section 9-1-3(C) (emphasis added).

**{30}**    Although Section 9-1-3 does not use the terms "major" and "policy-making or advisory," it is evident that the Legislature intended the executive cabinet members to play a major role in advising the Governor on public policy issues affecting the entire state. The executive cabinet members operate in very close organizational and functional proximity to the Governor, and because they advise the Governor regarding statewide policy issues, their roles are major ones. *Cf. Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012 NMSC-026, ¶ 46, 283 P.3d 853 (limiting executive privilege "to those communications to or from individuals in very close organizational *and* functional proximity to the Governor" and government documents "authored, or solicited and received, by either the Governor or an 'immediate advisor,' with 'broad and significant responsibility' for assisting the Governor with his or her decisionmaking" (citations omitted)). Based on the statutory duties described under Section 9-1-3, it is clear that the Legislature intended to exempt executive cabinet members from eligibility for unemployment compensation benefits pursuant to Section 51-1-44(A)(5)(a) because of their major advisory role in policy making. The Executive Reorganization Act serves as one example of how the Legislature could describe statutory duties that evince its intent to designate the position as one that is a major advisory position.

**{31}** Thus, to be ineligible for unemployment benefits, the statutory duties for a state position must provide equal or greater responsibilities than the statutory duties under Section 9-1-3. With this guiding principle in mind, we now analyze whether Claimants are eligible for unemployment compensation benefits by analyzing their former statutory duties against the statutory duties provided under Section 9-1-3.

**B.      The Legislature has not designated Claimants' former positions as either major policy-making or advisory positions**

**{32}** The statutory duties for Claimants' former positions are distinguishable from those of the executive cabinet under the Executive Reorganization Act. Of the former positions held by Claimants, only the position held by Perez had duties described by statute. Because the former positions held by Griego and Hatch do not have duties described by statute, we hold that the Legislature could not have designated their positions as major nontenured policy-making or advisory positions as required by Section 51-1-44(A)(5)(a). As a result, both Griego and Hatch are eligible for unemployment compensation benefits. Our analysis now focuses solely on the statutory duties for Perez's position.

**{33}** As state personnel director, Perez handled the administrative duties of the State Personnel Office and implemented the rules and policies promulgated by the State Personnel Board. Section 10-9-12. Specifically, her statutory duties were to:

> A.      supervise all administrative and technical personnel activities of the state;
>
> B.      act as secretary to the board;
>
> C.      establish, maintain and publish annually a roster of all employees of the state, showing for each employee his [or her] division, title, pay rate and other pertinent data;
>
> D.      make annual reports to the board;
>
> E.      recommend to the board rules he [or she] considers necessary or desirable to effectuate the Personnel Act; and
>
> F.      supervise all tests and prepare lists of persons passing them to submit to prospective employers.

*Id.* These statutory duties do not support the Department's conclusion that the Legislature designated Perez's former position as a major nontenured policy-making or advisory position.

**{34}** Within the State Personnel Office, only the State Personnel Board has major

13

policy-making statutory duties. The State Personnel Board has statutory authority to:

> A.    *promulgate regulations* to effectuate the Personnel Act;
>
> B.    hear appeals and *make recommendations to the employers*;
>
> C.    hire, with the approval of the governor, a director experienced in the field of personnel administration;
>
> D.    review budget requests prepared by the director for the operation of the personnel program and *make appropriate recommendations* thereon;
>
> E.    make investigations, studies and audits necessary to the proper administration of the Personnel Act;
>
> F.    *make an annual report to the governor* at the end of the fiscal year;
>
> G.    establish and maintain liaison with the general services department; and
>
> H.    represent the public interest in the improvement of personnel administration in the system.

Section 10-9-10 (emphasis added). The rules promulgated by the State Personnel Board set statewide personnel policies for employees covered under the Personnel Act such as "classification plan[s]," "pay plan[s]," "hours of work, holiday and leave," and "dismissal or demotion procedure[s]." Section 10-9-13(A), (B), (G), (H).

**{35}**    While State Personnel Board members have major policy-making duties they are not employees, and therefore they are not eligible for unemployment compensation benefits pursuant to Section 51-1-44(A)(5)(a). Of the six statutory duties under Section 10-9-12 for the state personnel director, only Subsection E granted Perez authority to recommend rules to the State Personnel Board. We agree with the Court of Appeals that " '[r]ecommend' can mean 'advise or counsel.' " *Perez*, 2014-NMCA-035, ¶ 19 (quoting *Black's Law Dictionary* 1436 (Rev. 4th 1968)). However, the issue is not whether a state employee has a duty to render some advice. The majority of the statutory duties of the personnel director under Section 10-9-12 are administrative. Whether and if the personnel director will make a recommendation to amend personnel rules is but a small part of the required job duties. Personnel rule amendments may be neither required nor desirable. By contrast, the Executive Reorganization Act requires the executive cabinet to regularly and continuously advise the Governor about problems in state government, investigate public policy concerns and recommend solutions, and assist the Governor in continually defining the policies that would

14

be responsive to the needs of the people of New Mexico. Section 9-1-3.

**{36}** Comparing the job description for the personnel director under Section 10-9-12 with the job description of the executive cabinet in Section 9-1-3, we conclude that the Legislature did not intend to designate the personnel director position as one that is nontenured and a major policy-making or advisory position. As a result, we hold that Perez is also eligible for unemployment compensation. Our conclusion is also consistent with the public policy of the Unemployment Compensation Law and our obligation to liberally construe that Law in favor of awarding unemployment compensation benefits to employees. Should the Legislature believe that we have misinterpreted its intent, we have outlined different approaches by which the Legislature can make its intentions clearer.

## III.    CONCLUSION

**{37}** The Department erred when it denied unemployment compensation benefits to Perez, Griego, and Hatch. We reverse the Court of Appeals's holding in *Perez*, 2014-NMCA-035, ¶¶ 1, 26, and reinstate the district court's order granting Perez unemployment compensation benefits. With respect to Griego, we reverse the district court's order affirming the Department's determination denying Griego unemployment compensation benefits. With respect to Hatch, we affirm the district court's order granting Hatch unemployment compensation benefits by reversing the Department's determination.

**{38}    IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**